RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0206P (6th Cir.)
File Name: 01a0206p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

99-4115

STEVEN GUEST; DENISE B.
KELLEY; NELDA STURGILL;
DEBORAH CUMMINGS;
RANDY BOWLING; RICHARD
E. KRAMER, on behalf of
themselves and all others
similarly situated,
        *Plaintiffs-Appellants,*

        *v.*

SIMON L. LEIS, JR.;
HAMILTON COUNTY
SHERIFF'S DEPARTMENT;
HAMILTON COUNTY
REGIONAL ELECTRONIC
COMPUTER INTELLIGENCE
TASK FORCE; DALE
MENKHAUS; JAMES
NERLINGER; DAVID L.
AUSDENMOORE,
        *Defendants-Appellees.*

Nos. 99-4115/4176

1

99-4176
MICHAEL O'BRIEN; NOAH
O'BRIEN; ANTHONY
BLACKMON; RANDALL
DODDS; DARRELL MCAVOY;
BRIAN KAEPPNER,
      *Plaintiffs-Appellants,*

*v.*

SIMON L. LEIS, JR.;
HAMILTON COUNTY
SHERIFF'S DEPARTMENT;
HAMILTON COUNTY
REGIONAL ELECTRONIC
COMPUTER INTELLIGENCE
TASK FORCE; DALE
MENKHAUS; JAMES
NERLINGER; DAVID L.
AUSDENMOORE,
      *Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
Nos.  95-00673; 96-00236—Herman J. Weber,
District Judge.

Argued:  March 15, 2001

Decided and Filed:  July 2, 2001

Before:  KEITH, NORRIS, and DAUGHTREY, Circuit
Judges.

of committing a criminal offense." 42 U.S.C. § 2000aa-7(a) & (b). The arguably PPA-protected materials were commingled with this criminal evidence on computers whose owner or operator was a criminal suspect. The seizure of the PPA materials occurred incidentally to the seizure of this evidence pursuant to a valid warrant, and plaintiffs have not shown that the protected materials were searched. We will not find liability under the PPA under these circumstances.[13]

## VI. Conclusion

For the foregoing reasons, the judgments of the district court are **affirmed**.

---

[13]Because we have determined that the district court did not err in granting summary judgment in favor of defendants, we need not reach defendants' claim that they are immune from liability under the Eleventh Amendment.

---

## COUNSEL

**ARGUED:** Peter D. Kennedy, GEORGE & DONALDSON, LLP, Austin, Texas, Scott T. Greenwood, GREENWOOD & ASSOCIATES, Cincinnati, Ohio, for Appellants. John W. Hust, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Peter D. Kennedy, GEORGE & DONALDSON, LLP, Austin, Texas, Scott T. Greenwood, GREENWOOD & ASSOCIATES, Cincinnati, Ohio, for Appellants. John W. Hust, Michael E. Maundrell, Lawrence Edward Barbiere, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio, Hugh Owen Frost, II, Cincinnati, Ohio, Donald E. Hardin, HARDIN, LEFTON, LAZARUS & MARKS, LLC, Cincinnati, Ohio, for Appellees.

---

## OPINION

---

ALAN E. NORRIS, Circuit Judge. In 1995, the Hamilton County, Ohio, Regional Electronic Computer Intelligence Task Force (RECI) was investigating on-line obscenity and seized two computer bulletin board systems. The first system seized was the Cincinnati Computer Connection Bulletin Board System (CCC BBS). Several users of the system filed a class action on behalf of subscribers against RECI, the sheriff, and his department alleging violations of the First and Fourth Amendments, the Electronic Communications Privacy Act (ECPA), and the Privacy Protection Act (PPA), and setting out state law and common law claims. The second system seized in the same general investigation was the Spanish Inquisition Bulletin Board System (SI BBS). The system's users, operator, and computer owner brought suit against the same defendants alleging the same violations as in the CCC BBS suit.

The district court granted summary judgment for defendants in each case, and plaintiffs appeal.[1] We affirm.

## I. Background

### A. Cincinnati Computer Connection Bulletin Board System

In early 1995, there was a complaint lodged with the Hamilton County Sheriff's Department about on-line obscenity, and RECI, a division of the sheriff's department, began investigating several electronic bulletin board systems, including the CCC BBS. The CCC BBS computers were operated by Robert Emerson in Union Township (Clermont County), Ohio.[2] The system, according to plaintiffs, included "thousands of subscribers from the Greater Cincinnati area, the United States and even overseas." *Guest* Brief at 5. Users could, with a password, send e-mail to subscribers or to others on the internet. They could also participate in chat room conversations, on-line games, and conferences, where they could post or read messages on many topics, and they could download files such as computer programs and pictures.

RECI officers assumed an undercover identity and obtained access to the adult part of the bulletin board system, where they downloaded sample images. A detective presented more than one hundred of these images to a Hamilton County municipal court judge, who determined that forty-five of them were obscene. RECI officers then prepared a search warrant, which identified the forty-five obscene images. The affidavit attached to the warrant listed the offenses in question as pandering obscenity (OHIO REV. CODE § 2907.32) and possessing criminal tools (OHIO REV. CODE § 2923.24).

---

[1]Because plaintiffs have not mentioned their state law claims on appeal, we consider the issues forfeited. They have explicitly waived their statutory claim under 18 U.S.C. §§ 2510-2521.

[2]Emerson is not a member of the plaintiff class. He was indicted in Clermont County, Ohio, in 1996 and pleaded guilty to six counts of attempted pandering of obscenity.

---

for documents on a computer, it will often be difficult or impossible (particularly without the cooperation of the owner) to separate the offending materials from other "innocent" material on the computer. The PPA does not explicitly address the question of liability for a seizure of communicative material that is technically difficult to separate from the evidence of a crime whose seizure is authorized by a valid warrant.

If we were to understand the statute to mean that the presence of some protected materials on the computer extends the PPA protections to all materials, even evidence of a crime, located on the computer, the statute would prevent police in many cases from seizing evidence located on a computer. Criminals would be able to insulate any of their electronically-held criminal records or evidence by including on their computer communicative materials that qualify as work product or documentary materials under the PPA. We hold that when protected materials are commingled on a criminal suspect's computer with criminal evidence that is unprotected by the act, we will not find liability under the PPA for seizure of the PPA-protected materials.[12] We emphasize, though, that police may not then search the PPA-protected materials that were seized incidentally to the criminal evidence.

In the instant cases, we will assume without deciding that there were PPA-protected materials on the systems. The targeted files—obscene images or pirated software—would not qualify as protected work product or documentary material because both definitions exclude "property designed or intended for use, or which is or has been used as, the means

---

[12]Plaintiffs rely again on *Steve Jackson Games*, 816 F. Supp. 432. That case, in which the court awarded PPA damages to a company but not to bulletin board subscribers after the Secret Service seized and searched three of the company's computers, is distinguishable from the instant cases. The owner of the computers was not a criminal suspect, and the court found that the agents had read the electronic communications and deleted some documents. *Id.* at 438.

### B. Discussion

Defendants argue that most of the plaintiffs lack standing in these cases because only the operator of the bulletin board systems "possessed" the materials at issue in these cases. However, the statute creates a cause of action for any "aggrieved person": "A person aggrieved by a search for or seizure of materials in violation of this chapter shall have a civil cause of action for damages for such search or seizure . . . ." 42 U.S.C. § 2000aa-6(a); *cf.* 18 U.S.C. § 2510(11) (defining "aggrieved person" under ECPA Title I as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed"). Accordingly, plaintiffs had standing to bring a PPA claim because they were "aggrieved" by the seizure of their communications.

The statute's protection of documents held by publishers such as mainstream newspapers may be straightforward, but interpretation of the act presents particular challenges in a situation unforeseen by the drafters, that of a computer search. As we have explained, when police execute a search warrant

_____

relate: Provided, however, [t]hat a government officer or employee may not search for or seize such materials under the provisions of this paragraph if the offense to which the materials relate consists of the receipt, possession, communication, or withholding of such materials or the information contained therein (but such a search or seizure may be conducted under the provisions of this paragraph if the offense consists of the receipt, possession, or communication of information relating to the national defense, classified information, or restricted data under the provisions of [certain federal laws], or if the offense involves the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, the sexual exploitation of children, or the sale or purchase of children under section 2251, 2251A, 2252, or 2252A of Title 18) . . . .

42 U.S.C. § 2000aa(a).

RECI showed the warrant to attorneys in the Hamilton County prosecutor's office and edited it after this meeting. The revised warrant authorized the search and seizure of computer hardware, software, financial and computer records, and personal communications, limiting the items searched or seized to those that had been used in the offense. RECI officers then presented the warrant to a Clermont County municipal court judge, who signed the warrant, directing it to the police chief of Union Township, located in Clermont County.

On June 16, 1995, members of RECI and the Union Township Police Department went to the home of Robert Emerson to execute the warrant. The officers asked Emerson to locate the obscene images on his system so that they could seize only those files; Emerson denied knowledge of obscene images on the computer and placed a call to his lawyer. While everyone waited for the attorney to return the call, the Union Township officers left the house. Emerson eventually stated that he did not know where the images were on the computer. Several hours after the police's arrival, with still no word from the lawyer, the RECI officers began dismantling the computer system to take it away; Emerson then said that the images were on the large file server. The officers, skeptical of his statement, seized the large and small file servers and took them to the police station.

Deputy Sheriff Ausdenmoore explained the way the computer search proceeded at the station. He said that he used a computer program to locate the forty-five obscene files according to the file names listed in the warrant, and he also searched for unlicenced software. He testified that once he had located the image files, he did not review the rest of the seized property. Plaintiffs, on the other hand, allege that defendants read e-mail on the seized system.

On August 7, 1995, plaintiffs filed this suit against the Hamilton County Sheriff's Department, RECI, Hamilton County Sheriff Simon Leis, and Deputy Sheriffs Dale Menkhaus, James Nerlinger, and David Ausdenmoore. The

class of CCC BBS users was certified on July 5, 1996. Sometime during the pendency of the suit, defendants returned the computer equipment to Emerson. On March 31, 1998, the magistrate judge issued a report and recommendation to grant the defendants' motions for summary judgment on the ECPA, Fourth Amendment, and corollary Ohio constitutional claims, and to grant qualified immunity to the individual defendants on the Fourth Amendment claim. The district court adopted the recommendation on September 30, 1996, and later granted defendants' renewed motion for qualified immunity and summary judgment on the remaining claims, dismissing the case on August 5, 1999.

### B. Spanish Inquisition Bulletin Board System

The SI BBS was a smaller bulletin board system than the CCC BBS, and it was run by a teenager on his father's home computer. Only one user could log on at a time, and the connection to the internet was more rudimentary than the CCC BBS's connection. The SI BBS included a posted disclaimer on privacy:

> Pursuant to the Electronic and Communications Privacy Act of 1986, Title 18 U.S. Code 2510 and following, all users are hereby notified that there are NO provisions for private messages on this board. This is TRUE notwithstanding the fact that the system software indicates to the user that he or she may and can make a message "private." All messages may be read by the SysOp [systems operator] and his assigns[.]

*O'Brien* Joint Appendix (J.A.) at 655 (Nerlinger Dep. at 237).

The SI BBS investigation began after a parent reported to police that his son and a friend were viewing child pornography. RECI officials interviewed several of the juveniles implicated and analyzed their computers, which disclosed child and adult pornography and files indicating unauthorized access to computer systems. RECI traced the latter files, called HPACV

bars seizure of "documentary materials," which include materials like notes, photographs, or tapes, other than things possessed for use in a criminal offense.[10] The police may still access documentary materials with a subpoena, an option not available for work product materials. *See* 42 U.S.C. § 2000aa(b)(3).

The police can avoid the constraints of the act in some circumstances when the person possessing the materials is a criminal suspect, rather than an innocent third party. The materials exempted by this "suspect exception" must relate to the offense and the offense must not involve the communication of the materials.[11]

---

> (3) include mental impressions, conclusions, opinions, or theories of the person who prepared, produced, authored, or created such material.

42 U.S.C. § 2000aa-7(b).

[10]Documentary material encompasses:

> materials upon which information is recorded, and includes, but is not limited to, written or printed materials, photographs, motion picture films, negatives, video tapes, audio tapes, and other mechanically, [magnetically] or electronically recorded cards, tapes, or discs, but does not include contraband or the fruits of a crime or things otherwise criminally possessed, or property designed or intended for use, or which is or has been used as, the means of committing a criminal offense.

42 U.S.C. § 2000aa-7(a).

[11]The "suspect exception" provides:

> [T]his provision [barring search and seizure of work product materials] shall not impair or affect the ability of any government officer or employee, pursuant to otherwise applicable law, to search for or seize such materials, if—

> > (1) there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials

records were searched in the case. *Id.* at 567-68. According to the Senate Report, the PPA was enacted to afford "the press and certain other persons not suspected of committing a crime with protections not provided currently by the Fourth Amendment." S. Rep. No. 96-874, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3950.

The PPA prohibits the government from seizing certain materials, called "work product materials," that are intended for publication:

> Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce.

42 U.S.C. § 2000aa(a).

Work product material means materials (other than property used to commit a criminal offense) that are to be communicated to the public and contain the authors' impressions, opinions, conclusions, or theories.[9] The act also

---

[9]Work product materials are defined by the statute as:

materials, other than contraband or the fruits of a crime or things otherwise criminally possessed, or property designed or intended for use, or which is or has been used, as the means of committing a criminal offense, and—

(1) in anticipation of communicating such materials to the public, are prepared, produced, authored, or created, whether by the person in possession of the materials or by any other person;

(2) are possessed for the purposes of communicating such materials to the public; and

---

(hacker/phreaker/anarchy/cracking/virus) files, to the SI BBS, but the detectives were unable to gain access to the bulletin board system. They obtained a warrant on the basis of their interviews with the juveniles and examination of their computers, which indicated that the SI BBS was used to tap phone lines, recover debit card numbers, acquire pirated software, and download child pornography. The warrant borrowed the CCC BBS warrant language authorizing the seizure of all equipment, documentation, and personal communications that were used in the offenses listed. The supporting affidavit listed three offenses: illegal use of a minor in nudity-oriented material (OHIO REV. CODE § 2907.323), unauthorized use of property (OHIO REV. CODE § 2913.04), and possessing criminal tools (OHIO REV. CODE § 2923.24). The warrant for a search of the owner's home in Butler County was issued by the Butler County Court of Common Pleas and directed to the Police Chief of Union Township.[3]

On August 31, 1995, RECI executed the search warrant for the SI BBS. After unsuccessful attempts to contact the computer's owner, defendants removed computer equipment and disks. Union Township police accompanied RECI officials and remained present until RECI officials left the premises.

This lawsuit was filed on March 6, 1996, by four individual members of the SI BBS, the operator of the SI BBS, and the owner of the computer that housed the system. Plaintiffs alleged the same violations of law in this suit as in the CCC BBS suit, but the court denied class certification. On November 5, 1998, the district court granted summary judgment on the ECPA, Fourth Amendment, and corresponding Ohio constitutional claims and found the individual defendants entitled to qualified immunity on the constitutional claims. On August 5, 1999, the court granted

---

[3]This appears to have been the former name of the West Chester Police Department, located in Butler County, notwithstanding a Union Township police force in Clermont County.

defendants' motion for qualified immunity and summary judgment on the remaining claims.

## II. Fourth Amendment

Plaintiffs argue that the district court erred in granting qualified immunity and summary judgment to the defendants on the Fourth Amendment claims. We review a grant of summary judgment, including summary judgment on the grounds of qualified immunity, de novo. *McCloud v. Testa*, 97 F.3d 1536, 1541 (6th Cir. 1996). Summary judgment is appropriate where, viewing the evidence in the light most favorable to the non-moving party, there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Birgel v. Bd. of Comm'rs*, 125 F.3d 948, 950 (6th Cir. 1997).

Qualified immunity shields government officials from liability, as well as from suit, if their official conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). We review issues of qualified immunity using a two-step inquiry. First, we determine whether the plaintiff has demonstrated the violation of a constitutionally protected right. *Brennan v. Township of Northville*, 78 F.3d 1152, 1154 (6th Cir. 1996). If there is such a violation, then we examine "whether the right is so 'clearly established' that a 'reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Plaintiffs argue that defendants did not have the legal authority to conduct a search and seizure outside of their (Hamilton County) jurisdiction; that defendants exceeded the scope of the warrants; that the search warrants were not sufficiently particularized; that the warrants did not state probable cause for the seizure of e-mail and subscriber information; and that defendants were not entitled to qualified immunity because they were governmental units. Defendants challenge plaintiffs' standing to assert the Fourth Amendment claims.

thus a governmental entity may not violate that subsection by simply accessing information improperly").[7]

In their brief, plaintiffs mention in passing 18 U.S.C. § 2701, which prohibits intentional unlawful access to an electronic communication service if the offender "obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage." 18 U.S.C. § 2701(a). Such access is again excused if it occurs pursuant to the approved procedures, which include the use of a warrant.[8] There was no violation of the ECPA in these cases.

## V. Privacy Protection Act

### A. The Statute

Plaintiffs claim that the defendants seized materials intended for publication and thus violated the Privacy Protection Act (PPA), an act prohibiting police searches for certain types of documents intended for publication. The statute was passed in response to *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978), in which the Supreme Court held that the Fourth Amendment did not prohibit police from undertaking searches and seizures of documentary evidence held by innocent third parties, such as the newspaper whose

---

[7] We do not find persuasive a federal district court decision in Texas cited by plaintiffs. *See Steve Jackson Games, Inc. v. United States Secret Service*, 816 F. Supp. 432 (W.D. Tex. 1993), *aff'd on different issue by* 36 F.3d 457 (5th Cir. 1994). In *Steve Jackson Games*, the district court awarded damages under the ECPA after Secret Service agents searched the computers of a publishing company that also operated a bulletin board system. *Id.* at 443. The court appeared to assume that the provisions of the ECPA require notice to subscribers even when police are operating with a valid warrant, an understanding we do not find supported by the statute. *Id.*

[8] Section 2701 provides that the ban on obtaining, altering, or preventing access does not apply if the access is authorized "in section 2703 [warrant, administrative subpoena, grand jury or trial subpoena, court order], 2704 or 2518 of this title." 18 U.S.C. § 2701(c)(3).

directed to the provider of an electronic communication service (not to the government) and states that such a provider may only give subscriber information to the government if the government has a warrant, court order, or subscriber consent (with an exception for telemarketing fraud).[6]

We conclude that plaintiffs have not stated a claim under the ECPA. There is no violation of § 2703(a), (b), or (c) if access is pursuant to a warrant, and the officials in this case had a valid warrant. Moreover, § 2703(c) applies to the service provider and not to the government. *See Tucker v. Waddell*, 83 F.3d 688, 693 (4th Cir. 1996) ("[T]he language of § 2703(c) does not prohibit any governmental conduct, and

---

> (ii) obtains a court order for such disclosure under subsection (d) of this section;
>
> except that delayed notice may be given pursuant to section 2705 of this title.

18 U.S.C. § 2703(a)-(b). Paragraph (b)(2) requires the communication to have been electronically transmitted by a subscriber or customer for the purpose of storage or processing, and the provider must not be authorized to access the communications for other purposes. 18 U.S.C. § 2703(b)(2).

[6]Subsection (c) provides in relevant part:

> A provider of electronic communication service or remote computing service shall disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by subsection (a) or (b) of this section) to a governmental entity only when the governmental entity—
>
> (i) obtains a warrant issued under the Federal Rules of Criminal Procedure or equivalent State warrant;
>
> (ii) obtains a court order for such disclosure under subsection (d) of this section; [or]
>
> (iii) has the consent of the subscriber or customer to such disclosure . . . .

18 U.S.C. § 2703(c)(1)(B).

---

### A.  Standing

Defendants argue that plaintiffs do not have standing to assert Fourth Amendment claims in these cases. In order to challenge a search or seizure as a violation of the Fourth Amendment, a person must have had a subjective expectation of privacy in the place or property to be searched which was objectively reasonable. *Minnesota v. Olson*, 495 U.S. 91, 95-96 (1990). Home owners would of course have a reasonable expectation of privacy in their homes and in their belongings—including computers—inside the home. Bulletin board users would not share the same interest in someone else's house or computer, so they would not be able to challenge the search of the homes and the seizure of the computers as physical objects. Their interest in the computer content presents a different question and would depend on their expectations of privacy in the materials. In the *O'Brien* case, the SI BBS posted a disclaimer stating that personal communications were not private. This disclaimer defeats claims to an objectively reasonable expectation of privacy for the SI BBS users. *See United States v. Simons*, 206 F.3d 392, 398 (4th Cir. 2000) (finding no privacy interest in an employee's internet search records when an employer posted a privacy disclaimer regarding computer files). Accordingly, the *O'Brien* user-plaintiffs do not have standing to assert Fourth Amendment claims.

The *Guest* user-plaintiffs' standing would turn on the materials they had on the CCC BBS. Users would logically lack a legitimate expectation of privacy in the materials intended for publication or public posting. *See United States v. Maxwell*, 45 M.J. 406, 417-19 (C.A.A.F. 1996). They would lose a legitimate expectation of privacy in an e-mail that had already reached its recipient; at this moment, the e-mailer would be analogous to a letter-writer, whose "expectation of privacy ordinarily terminates upon delivery" of the letter. *United States v. King*, 55 F.3d 1193, 1196 (6th Cir. 1995) (citations omitted); *see also Maxwell*, 45 M.J. at 418. Whether the users had more private material on the system that entitled them to standing is not a question we

must reach since we conclude below that there was no Fourth Amendment violation in this case.

### B.  Legal Authority

Plaintiffs allege that defendants were outside of their jurisdiction and therefore did not have the legal authority to conduct the search or seizure in question.  Such an extra-legal seizure, say plaintiffs, was a Fourth Amendment violation, and defendants were not entitled to qualified immunity because their lack of jurisdiction rendered them private citizens.

Ohio law does not permit a police officer to execute a search warrant outside his jurisdiction unless an officer of the jurisdiction where the warrant is executed "accompanies the other officers and remains present at all times."  *State v. Miller*, No. 12198, 1986 WL 1127, at *1 (Ohio Ct. App. Jan. 22, 1986) (unpublished opinion); *see also State v. Harrison*, 20 Ohio Misc. 282, 287, 251 N.E.2d 521, 525 (Ct. Comm. Pleas 1969).  In the *O'Brien* case, the warrant was directed to Union Township police, who accompanied the defendants during the entire search and seizure at the O'Brien home.  There was therefore no violation of the search rule in the *O'Brien* case.

In the *Guest* case, the home to be searched was in Union Township, the search warrant was addressed to Union Township officials, and Union Township police accompanied the defendants but left before the actual seizure of the computer equipment occurred.  Although their departure violated the rule stated in *Miller* and *Harrison*, this conclusion does not end our inquiry.  We must still ask whether the failure to comply with a state rule rises to the level of a constitutional violation.

The Fourth Amendment protects against unreasonable searches and seizures.  *See, e.g.*, *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (stating that a reasonableness standard governs the execution of warrants).  The Ohio Court of Appeals declined to find a constitutional violation under

chapter."  18 U.S.C. § 2707(a).  The same section provides a statutory good faith defense; a defendant's "good faith reliance on . . . a court warrant or order" provides "a complete defense to any civil or criminal action brought under this chapter or any other law."  18 U.S.C. § 2707(e).

In their complaint, plaintiffs alleged violations of the ECPA requirements for access to stored communications and subscriber information, as set forth in 18 U.S.C. § 2703(a), (b), and (c).  Subsection (a) provides that the government may have access to the contents of electronic communications that have been stored 180 days or less only by using a warrant.  Subsection (b) allows the government to access contents that have been stored more than 180 days if the government uses a warrant, subpoena, or a court order.[5]  Subsection (c) is

------

[5] Subsections (a) and (b) provide:

(a)  Contents of electronic communications in electronic storage.—A governmental entity may require the disclosure by a provider of electronic communication service of the contents of an electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued under the Federal Rules of Criminal Procedure or equivalent State warrant. . . . .

(b)  Contents of electronic communications in a remote computing service.—(1) A governmental entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection—

(A)  without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued under the Federal Rules of Criminal Procedure or equivalent State warrant;

(B)  with prior notice from the governmental entity to the subscriber or customer if the governmental entity—

(i) uses an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena; or

seizure of books, and no showing that the seizure was designed to halt the distribution of materials. Courts have not required adversarial determinations of obscenity to precede similar computer searches. *See, e.g.*, *United States v. Hall*, 142 F.3d 988, 996 (7th Cir. 1998) (rejecting a First Amendment challenge to a search of defendant's computer because the warrant limited the search to items related to child pornography).

Although dicta in the *Heller* case suggest that police must return material if the seizure would otherwise impede publication, the Supreme Court noted that it was up to the materials' owner to request the return of the materials and to make a showing to the trial court that the seizure prevented a First Amendment activity. Plaintiffs in this case have failed to establish that they requested return of their materials. In fact, the district court concluded in the *Guest* case that the materials had been returned, and in the *O'Brien* case that "Plaintiffs [did] not allege that defendants continue[d] to hold materials that belong to them." (*O'Brien* Dist. Ct. Order, Nov. 5, 1998, at 31.) While the *O'Brien* plaintiffs chose to contest that conclusion at oral argument on appeal, they have not alleged that they presented the claim to the district court or requested their materials from the defendants. We leave the question suggested by *Heller*'s dicta for another case where plaintiffs have made a showing that they requested and were refused return of expressive materials. We find no First Amendment violation in these cases because defendants seized materials as evidence in criminal prosecutions pursuant to valid warrants.

## IV.  Electronic Communications Privacy Act

Plaintiffs assert that RECI searched their electronic communications and subscriber information and thus violated the Electronic Communications Privacy Act (ECPA). Title II of the ECPA regulates the disclosure of electronic communications and subscriber information.  18 U.S.C. §§ 2701-2711. Section 2707 provides a civil cause of action against a person who is "aggrieved by any violation of this

similar circumstances in *State v. Klemm*, 41 Ohio App. 3d 382, 383, 536 N.E.2d 14, 16 (Ct. App. 1987). In *Klemm*, the court considered the application of the exclusionary rule when Cincinnati police conducted a search outside of their jurisdiction. Even though the police violated state law, the violation did not make the search unreasonable in a constitutional sense because the search warrant was supported by probable cause. *Id.*; *see also United States v. Green*, 178 F.3d 1099, 1106 (10th Cir. 1999) ("The Fourth Amendment is satisfied where, as here, officers obtain a warrant, grounded in probable cause and phrased with sufficient particularity, from a magistrate of the relevant jurisdiction authorizing them to search a particular location, even if those officers are acting outside their jurisdiction as defined by state law."). The technical violation that occurred in the *Guest* case when the Union Township officers decided to leave the home did not render the search and seizure unreasonable in constitutional terms.

### C.  Exceeding the Scope of the Warrant

Plaintiffs claim that defendants exceeded the scope of the warrant by seizing and reading e-mail and members' subscriber information. The warrants authorized the search and seizure of:

[a]ny documentation and/or notations referring to the computer, the contents of the computer, the use of the computer or any computer software and/or communications. All information within the above listed items including but not limited to machine readable data, all previously erased data, and any personal communications including but not limited to e-mail, chat capture, capture files, correspondence stored in electronic form, and/or correspondence exchange in electronic form. . . . All items to be searched and/or seized having been used in the obtaining, maintenance, and/or as evidence of said offense.

*Guest* J.A. at 69-70; *O'Brien* J.A. at 242-43.

### 1. Seizure of Computer Contents

The warrant authorized the seizure of personal communications related to the offense. Although there were presumably communications on the computers that did not relate to the offenses, "[a] search does not become invalid merely because some items not covered by a warrant are seized." *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988). In *Henson*, a case affirming convictions involving false odometer statements, we rejected a Fourth Amendment challenge to the seizure of documents and computer files that were unrelated to the offenses because we concluded that it would have been unreasonable to require police to sort through extensive files in a suspect's office in order to separate out those items that were outside the warrant. *Id.* at 1383-84; *see also Davis v. Gracey*, 111 F.3d 1472, 1481 (10th Cir. 1997) (finding no Fourth Amendment violation when defendants seized a bulletin board system computer that contained personal communications unrelated to the crime under investigation); *United States v. Hay*, 231 F.3d 630, 637-38 (9th Cir. 2000) (finding no Fourth Amendment violation in the search and seizure of a computer system in a child pornography investigation); *United States v. Upham*, 168 F.3d 532, 536 (1st Cir. 1999) (same). In the instant cases, when the seizures occurred, defendants were unable to separate relevant files from unrelated files, so they took the computers to be able to sort out the documents off-site. Because of the technical difficulties of conducting a computer search in a suspect's home, the seizure of the computers, including their content, was reasonable in these cases to allow police to locate the offending files.

### 2. E-mail Search

Plaintiffs also allege that defendants read their e-mail, an allegation defendants deny. Plaintiffs rely for evidence on the following. A plaintiff testified as an expert witness that certain log records were missing from the *Guest* CCC BBS computers when the computers were returned; these logs normally keep a record of the use of the computer, and the

because the lack of a pre-seizure hearing risked the "abridgment of the right of the public in a free society to unobstructed circulation of nonobscene books." *A Quantity of Copies*, 378 U.S. at 213.

There is not, however, an absolute right to a prior adversarial hearing in cases where allegedly obscene material is seized to preserve evidence in a criminal prosecution. *Heller v. New York*, 413 U.S. 483, 488 (1973). Police are permitted to seize evidence of a crime—even expressive materials—if the seizure is pursuant to a valid warrant. In *Heller*, police with a warrant seized one copy of an allegedly obscene film. The Supreme Court did not find a First Amendment violation, holding that

> [i]f such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible.

*Id.* at 492. The Court emphasized that *Marcus* and *A Quantity of Copies* "concerned the seizure of large quantities of books for the sole purpose of their destruction." *Id.* at 491. "[W]here allegedly obscene material is seized, pursuant to a warrant, to preserve the material as evidence in a criminal prosecution," there is no absolute First or Fourteenth Amendment right to a prior adversary hearing. *Id.* at 488. In dicta, the Court warned that if the exhibitor made a showing to the trial court that he did not have other copies of the film available, "the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding. Otherwise, the film must be returned." *Id.* at 492-93 (footnotes omitted).

In the instant cases, RECI took the computers to establish evidence of criminal violations, as in *Heller*. They operated with a warrant and a prior determination of obscenity by a magistrate, unlike the *Marcus* case. There was no mass

*F. Qualified Immunity*

According to plaintiffs, "Defendants Leis, Hamilton County Sheriff's Department and RECI cannot assert qualified immunity" as "political subdivisions." *Guest* Br. at 46. Qualified immunity may be asserted by government officials sued in their individual capacity. *Harlow*, 457 U.S. at 807. As the district court granted qualified immunity only to the individual defendants, plaintiffs' objections about immunity for the sheriff's department and RECI are unfounded. Sheriff Leis was sued in his individual capacity (as well as in his official capacity), so he may properly assert the defense in his individual capacity. Because we have concluded that there were no Fourth Amendment violations, the individual defendants are all entitled to qualified immunity on the Fourth Amendment claims asserted against them in their individual capacities.[4]

### III. First Amendment

Plaintiffs allege that the defendants violated their First Amendment rights by seizing and shutting down the bulletin board systems, thus effecting a prior restraint on speech. They rely on two Supreme Court cases which established a general rule that police cannot make mass seizures of allegedly obscene material without a prior adversarial judicial determination of obscenity. *See A Quantity of Copies of Books v. Kansas*, 378 U.S. 205 (1964); *Marcus v. Search Warrants*, 367 U.S. 717 (1961). In *A Quantity of Copies*, police seized 1,715 copies of 31 novels after ex parte judicial examination of seven of the allegedly obscene books. *A Quantity of Copies*, 378 U.S. at 208-09. In *Marcus*, police seized approximately 11,000 copies of 280 publications, without a prior judicial determination of obscenity. *Marcus*, 367 U.S. at 723. Such seizures violated the First Amendment

---

[4]Plaintiffs argue that defendants are not entitled to qualified immunity because the officers did not follow the advice of the prosecutors who reviewed the warrant. Since we have found no constitutional violation, the advice of the prosecutors is irrelevant to our decision.

expert testified that defendants must have deleted the log files or prevented them from generating. The *Guest* plaintiffs also refer to a paper printout of the computer directories, which showed defendants' check marks next to several directory names, including a directory labeled "e-mail."

The printout and absence of log files are not evidence that the defendants read private communications. Plaintiffs are essentially relying on an assumption that because defendants *could have* read e-mail, there is evidence that they did read e-mail. Defendants may legitimately have checked to see that the contents of the directories corresponded to the labels placed on the directories. Suspects would otherwise be able to shield evidence from a search simply by "misfiling" it in a directory labeled "e-mail." In the *Guest* case, defendants had a list of file names and thus could conduct their search by reviewing the file names in a directory, without actually opening the files and viewing the contents. While we construe the facts on summary judgment in the light most favorable to the nonmoving party, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 581 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Plaintiffs' assumptions are insufficient to establish a genuine issue of fact regarding an e-mail search.

*3. Search of Subscriber Information*

Plaintiffs argue that defendants violated the Fourth Amendment by accessing bulletin board subscriber information. These records include information such as subscribers' names, addresses, birthdates, and passwords. As we have noted above, a person must have a reasonable expectation of privacy in the matter searched in order to challenge a search under the Fourth Amendment. Individuals generally lose a reasonable expectation of privacy in their information once they reveal it to third parties. *See United States v. Miller*, 425 U.S. 435, 443 (1976), *limited by statute*.

A bank customer, for instance, does not have a legitimate expectation of privacy in the information that he or she has conveyed to the bank; by placing the information under control of a third party, the customer assumes the risk that the bank will convey the information to the government. *Id.* Courts have applied this principle to computer searches and seizures to conclude that computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person—the system operator. *See Maxwell*, 45 M.J. at 418; *United States v. Kennedy*, 81 F. Supp. 2d 1103, 1110 (D. Kan. 2000) (rejecting a privacy interest in subscriber information communicated to an internet service provider); *United States v. Hambrick*, No. 99-4793, 2000 WL 1062039, at *4 (4th Cir. Aug. 3, 2000) (unpublished) (holding that defendant destroyed any privacy interest in his subscriber information when he conveyed it to an internet service provider) (citing *Miller*, 425 U.S. at 442). We conclude that plaintiffs in these cases lack a Fourth Amendment privacy interest in their subscriber information because they communicated it to the systems operators. In addition, in the *O'Brien* case, subscriber information would be that of the users, who do not have Fourth Amendment standing.

### 4. Software Search

Plaintiffs also assert that defendants exceeded the scope of the warrant when they searched for unlicenced software. The only individual with a privacy interest in the software would be the person possessing the software, i.e., the computer's owner or the system operator. In the *Guest* case, the owner and bulletin board operator, Robert Emerson, is not a party to the case. In the *O'Brien* case, although the owner and operator are parties, the warrant listed the offense of "possession of unlicenced property," so the search for unlicenced software in that case was clearly authorized by the warrant.

### D. Particularity

Plaintiffs argue that the warrant failed to describe with sufficient particularity the things to be seized. They seem to base this argument on the warrant's failure to particularly identify communications or subscriber information. A search warrant must particularly describe the things to be seized, but the description, whose specificity will vary with the circumstances of the case, will be "valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *Henson*, 848 F.2d at 1383 (quoting *United States v. Blum*, 753 F.2d 999, 1001 (11th Cir. 1985)).

In the instant cases, the warrants required that the communications and computer records pertain to the listed offenses. Defendants could not have obtained more specific identification of e-mails and subscriber data, which were not accessible to them. The description was thus particular enough as the circumstances permitted for these items. Moreover, since plaintiffs have not established that their communications were searched, there would be no harm from an alleged defect in the warrant regarding any of the communications.

### E. Probable Cause

Plaintiffs assert that the warrants did not state "probable cause to believe that the Plaintiffs' public and private communications, and their subscriber information, was evidence of a crime." *Guest* Brief at 43. Plaintiffs do not dispute in their briefs that defendants had probable cause to search for evidence of crimes on the computers. As we have already determined, the difficulty of locating and extracting these images meant that a seizure of the whole computer system was not unreasonable, so long as there was probable cause to conclude that evidence of a crime would be found on the computer. An analysis of probable cause to search the materials is unnecessary since plaintiffs have failed to establish that their communications were searched, and they lack a privacy interest in their subscriber information.