Clyde **WILSON**, Plaintiff–Appellant,

v.

**TRUMBULL COUNTY, OHIO, et al., Defendants–Appellees.**

No. 02–3134.

United States Court of Appeals, Sixth Circuit.

July 2, 2003.

BEFORE: DAUGHTREY and ROGERS, Circuit Judges, and QUIST,* District Judge.

PER CURIAM.

The plaintiff, Clyde Wilson, brought this 42 U.S.C. § 1983 action against Trumbull County and four Trumbull County law enforcement officers for alleged constitutional violations stemming from a traffic stop. Wilson did not question the legality of the initial stop, but instead challenged what he considered to be an unnecessarily long detention and an unjustified canine search of his vehicle. After the county and two of the officers were voluntarily dismissed, the remaining two defendants moved for summary judgment based on qualified immunity, which the district court granted. Wilson appeals only from the district court's decision regarding the length of the detention. For the reasons set out below, we affirm the district court's decision.

While on patrol in the early morning hours of February 6, 2001, Deputy Brian Kaintz observed an older-model pickup truck being driven with one of its headlights out. Kaintz fell in behind the truck to check the license plate and saw it cross the center line on several occasions. At 2:19 a.m., Kaintz stopped Wilson's truck for "improper usage of lanes of travel, a vehicle defect regarding only one operating headlight, and possible drug or alcohol influence." Before approaching the truck, Kaintz contacted the dispatcher to check the license plate on the truck and was informed that it was registered to a used-car dealership in Youngstown, Ohio, and that it had not been reported stolen.

When Kaintz did approach the truck, he saw that the driver—who turned out to be plaintiff Wilson—had a radar detector, a roll of duct tape, cans of air freshener, a large gym bag, and mouthwash in the truck. The officer also noticed that the vehicle smelled heavily of air freshener. When asked about the truck, Wilson told Kaintz that he was test-driving it. He was able to produce his driver's license and proof of insurance, but he did not have the certificate of registration for the vehicle. In order to confirm the identity of the owner, Kaintz sought the vehicle identification number (VIN). For reasons of safety, he asked Wilson to wait in the rear seat of the police car while he looked for the VIN, and Wilson complied with the request. After he had relayed the VIN to the dispatcher, Kaintz learned that there was "no history" for that VIN, which to Kaintz was an "unusual response." Kaintz rechecked the number and, again, was unable to find a record for that VIN. Another deputy, Robert Altier, stopped to provide assistance and came up with the same VIN and same result.

The two deputies then returned to the police car, and Kaintz began to write a traffic citation for Wilson. At this point, Wilson demanded the names and badge numbers of the two deputies. Kaintz thought Wilson's behavior was suspicious and decided that he should call for a supervisor. His supervisor, Lieutenant Dan-

* The Hon. Gordon J. Quist, United States District Judge for the Western District of Michi-

gan, sitting by designation.

iel D'Annunzio arrived on the scene at 2:38 a.m. D'Annunzio double-checked the VIN recorded by Kaintz and looked for additional VIN plates. He also had his drug-detection dog conduct a search of the vehicle, but the dog did not indicate the presence of any narcotics. D'Annunzio instructed Kaintz to handle the situation as he saw fit. As D'Annunzio was leaving, Lieutenant Peter Lucic arrived at the scene. Wilson asked Lucic for a pen and his name, both of which Lucic provided. Kaintz then issued a citation to Wilson for the lane violation, and, at 2:55 a.m., reported his departure to the dispatcher. The entire detention, from the time of the stop until the time of Kaintz's last report, took 36 minutes.

The charge against Wilson was later amended to include a citation for the non-functioning headlight. Wilson pleaded no contest to the charge and was found guilty of operating an unsafe vehicle.

Wilson then brought this § 1983 action against Trumbull County, Altier, D'Annunzio, Kaintz, and Lucic. In his complaint, Wilson alleged that his car was unlawfully searched and that his detention subsequent to when Kaintz began writing the citation was unlawful because it extended beyond the time necessary to effectuate the purpose of the traffic stop. Defendants Trumbull County, Altier, and Lucic were voluntarily dismissed, and D'Annunzio and Kaintz moved for summary judgment. The district court granted the defendants' motion for summary judgment, and Wilson now appeals to this court. In his appeal, Wilson challenges only the district court's decision regarding the length of the detention. Accordingly, the issue of the search has been abandoned. *See Enertech Elec., Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 259 (6th Cir.1996).

We review a district court's grant of summary judgment *de novo. See Guest v. Leis*, 255 F.3d 325, 332 (6th Cir.2001).

Summary judgment is appropriate when there is no genuine issue as to any material fact. Fed.R.Civ.P. 56. In making this determination, courts must consider the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The threshold question we must consider in determining whether the defendants are entitled to qualified immunity is whether, taken in the light most favorable to Wilson, the facts alleged are sufficient to make out a constitutional violation. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

At issue in this case is whether the officers violated Wilson's rights under the Fourth Amendment, which guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "The Amendment's touchstone is reasonableness, which is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 34, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). An automobile stop is considered reasonable "where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "Once the purpose of the traffic stop is completed, a motorist cannot be

further detained unless something that occurred during the traffic stop caused the officer to have reasonable, articulable suspicion that criminal activity was afoot." *United States v. Hill,* 195 F.3d 258, 264 (6th Cir.1999). In other words, without such reasonable suspicion, the officer's subsequent actions must be "reasonably related in scope to circumstances justifying the original interference." *Id.; see also United States v. Townsend,* 305 F.3d 537, 541 (6th Cir.2002).

The district court found that there was reasonable suspicion of drug activity. In reaching this decision, the district court considered the smell of air freshener, the presence of cans of air freshener, duct tape, and a radar detector, Wilson's explanation that he was test-driving the truck, the fact that the VIN had no corresponding history, and Wilson's "mood change" and "insistence with regard to the officers' names." Having found reasonable suspicion of drug activity, the district court found that the detention and search were constitutional.

Without regard to the correctness of the district court's holding, we affirm the grant of summary judgment on an alternative ground. We conclude that the entire detention was "reasonably related in scope to circumstances justifying the original interference" and, therefore, that it did not require reasonable suspicion of illegal activity. *Hill,* 195 F.3d at 264.

The gravamen of the complaint is that Kaintz called for a supervisor only after he had begun writing the citation and after Wilson demanded the names and badge numbers of Kaintz and Altier. Although Kaintz could have given Wilson the citation at the point he returned to the police car, his decision to seek assistance from his supervisor was both reasonable and reasonably related to the circumstances justifying the initial stop. At this point, Kaintz had neither resolved the discrepancy in the VIN nor issued the citation. Although ultimately he decided it was unnecessary to continue to investigate the VIN, his initial decision to seek assistance from his supervisor did not make the subsequent detention unreasonable. Rather, Kaintz's call for assistance from a supervisor was part and parcel of the initial stop, and the continued detention of Wilson was reasonably related in scope to the circumstances that prompted Kaintz to initiate the traffic stop.

Because there was no Fourth Amendment violation shown in this case, no further inquiry into the question of qualified immunity was necessary, and the district court's order of summary judgment in favor of the defendants was correctly entered. We therefore AFFIRM the judgment of the district court.