**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David Leigh KING, Defendant–Appellant.
No. 94–1556.**

United States Court of Appeals,
Sixth Circuit.

Argued March 16, 1995.

Decided June 5, 1995.

**1194**

Patrick E. Corbett, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Detroit, MI, for plaintiff-appellee.

Thomas V. Wilhelm (argued and briefed), Bloomfield Hills, MI, for defendant-appellant.

Before: NORRIS and SUHRHEINRICH, Circuit Judges; BERTELSMAN, Chief District Judge.*

BERTELSMAN, Chief District Judge.

David Leigh King appeals his conviction and sentence for aiding and abetting bank fraud. The United States District Court for the Eastern District of Michigan denied King's motion to suppress, accepted a conditional guilty plea to one count of aiding and abetting bank fraud, and sentenced King to incarceration for 33 months. King appeals his conviction and sentence claiming that the District Court improperly denied his motion

* The Honorable William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

to suppress and improperly enhanced his sentence under both United States Sentencing Guideline §§ 2F1.1(b)(2)(B) and 3B1.1(c). We affirm the District Court's decision.

In January 1992, the Federal Bureau of Investigation received information linking David King's wife, Laura King, to possible bank fraud. At all times relevant to this opinion, David King was incarcerated on unrelated state charges.

During an interview with FBI Special Agent James Triano, Mrs. King admitted committing bank fraud. Mrs. King's former husband, Peter Trainor, admitted to Agent Triano that he, too, had participated in the bank fraud.

Shortly thereafter, Mrs. King asked Trainor to remove some items from her apartment, including various documents. She specifically directed that he burn certain papers.

Acting at Mrs. King's direction, Trainor removed the items from her home, including a box and suitcase containing fifty-one letters that King had written to his wife from prison. Trainor transported the items he removed from Mrs. King's apartment to his own home. Despite Mrs. King's instructions to the contrary, Trainor did not burn any of the documents he removed from Mrs. King's apartment.

On January 13, 1992, Trainor called Agent Triano and asked to speak to him concerning Trainor's "exposure" in the bank fraud matter. Trainor informed Agent Triano that he had some property that he felt was "somehow involved in the bank fraud." Agent Triano met with Trainor and, at Trainor's suggestion, he reviewed the letters King sent to his wife. The letters contained detailed instructions from defendant to his wife concerning ways in which to commit bank fraud.

On November 5, 1993, an information was filed charging David Leigh King with one count of aiding and abetting bank fraud. Defendant moved to suppress the letters he sent to his wife, but the District Court denied his motion. On January 3, 1994, defendant entered a conditional guilty plea to the one-count information. He reserved the right to appeal any adverse evidentiary and sentencing rulings.

On May 5, 1994, the District Court sentenced King to 33 months imprisonment. In sentencing the defendant, the court determined that King had engaged in a scheme to defraud more than one victim within the meaning of Sentencing Guideline § 2F1.1(b)(2) and that King was an organizer or leader of criminal activity within the meaning of Sentencing Guideline § 3B1.1. King now appeals both his conviction and his sentence on the grounds that the District Court improperly denied his motion to suppress and that application of both Guideline §§ 2F1.1(b)(2) and 3B1.1 constituted impermissible "double counting."

## THE DISTRICT COURT PROPERLY DENIED KING'S MOTION TO SUPPRESS

We agree with the government's contention that King has no standing to challenge the government's seizure and use of the letters he mailed to his wife. We also agree with the government that, even if King had standing to allege a Fourth Amendment violation, the letters should not be suppressed because they were acquired through the acts of a private individual.

■ The Fourth Amendment[1] to the United States Constitution protects against unreasonable government searches and seizures. To allege a Fourth Amendment violation, an individual must have "a legitimate expectation of privacy" in the items searched or seized. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Barry*, 673 F.2d 912 (6th Cir.), *cert. denied*, 459 U.S. 927, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982).

■ It is well established that letters are "in the general class of effects" protected by the Fourth Amendment. *United States v. Jacobsen*, 466 U.S. 109, 114, 104 S.Ct. 1652,

---

1. The Fourth Amendment reads in pertinent part:
    The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated. . . .

1656, 80 L.Ed.2d 85 (1984). However, if a letter is sent to another, the sender's expectation of privacy ordinarily terminates upon delivery. 4 Wayne R. LaFave, *Search and Seizure*, § 11.3(f)(1987); *United States v. Knoll*, 16 F.3d 1313, 1321 (2nd Cir.), *cert. denied sub nom., Gleave v. United States*, —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994). This is true even though the sender may have instructed the recipient to keep the letters private. *United States v. Williams*, 951 F.2d 853, 856 (7th Cir.1992) (test for standing is whether sender of note expected it to be returned).

■ In this case, King voluntarily mailed the letters at issue to his wife. Although he may have instructed her to preserve the confidentiality of the letters, there is no evidence that he expected her to return the letters to him. Under those circumstances, his expectation of privacy in the letters terminated upon delivery of the letters to his wife. Therefore, King lacks standing to allege a Fourth Amendment violation in the seizure of those letters.

■ In addition, even if King had standing, the letters should not be suppressed because the government acquired them through the actions of a private individual. The Fourth Amendment does not apply to searches or seizures by private persons. *Jacobsen*, 466 U.S. at 114, 104 S.Ct. at 1656. Rather, it "proscribes only governmental action and does not apply to a search or seizure, even an unreasonable one, conducted by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official." *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir.), *cert. denied*, 474 U.S. 1034, 106 S.Ct. 598, 88 L.Ed.2d 577 (1985).

■ Once a private search is conducted, the government's subsequent use of the information obtained in the private search does not implicate the Fourth Amendment as long as the government's use does not exceed the scope of the private search. *Jacobsen*, 466 U.S. at 116–117, 104 S.Ct. at 1658. This is true even if the private party betrayed a confidence in providing the information to the government:

It is well settled that when an individual reveals private information to another, he assumes the risk that his confidant will reveal that information to the authorities, and if that occurs the Fourth Amendment does not prohibit governmental use of that information. Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now nonprivate information: "This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in a third party will not be betrayed."

*Id.* at 117, 104 S.Ct. at 1658 (quoting *United States v. Miller*, 425 U.S. 435, 443, 96 S.Ct. 1619, 1624, 48 L.Ed.2d 71 (1976)).

The Fourth Amendment, then, does not prohibit the government from using the information ultimately conveyed to the FBI.

## THE DISTRICT COURT DID NOT ERR IN ENHANCING KING'S SENTENCE UNDER BOTH GUIDELINE PROVISIONS

The District Court applied a two-level enhancement to King's sentence under Sentencing Guideline § 3B1.1(c) for being the organizer or leader of criminal activity and applied a second two-level enhancement under Guideline § 2F1.1(b)(2)(B) because the offense involved a scheme to defraud more than one victim. Relying on this court's decision in *United States v. Romano*, 970 F.2d 164 (6th Cir.1992), King contends that the District Court engaged in impermissible "double counting" by applying both of these enhancements. King's reliance is misplaced.

In *United States v. Romano*, this court concluded that the same conduct could not be used to enhance a defendant's sentence under more than one enhancement provision, stating, "[I]f certain conduct is used to enhance a defendant's sentence under one enhancement provision, the defendant should not be penalized for that same conduct again

under a separate provision." *Romano,* 970 F.2d at 167. Accordingly, the court concluded that Romano's sentence could not be enhanced under Guideline § 3B1.1 for being an organizer or leader of more than five participants and § 2F1.1(b)(2) for "more than minimal planning" because more than minimal planning is necessarily required to be an organizer or leader of more than five persons. *Romano,* 970 F.2d at 166–67.

■ In the case at bar, the District Court enhanced the defendant's sentence under the more than one victim prong of Guideline § 2F1.1(b)(2) rather than the more than minimal planning prong of that section. This court has expressly held that enhancement under Guideline § 3B1.1 as well as under the multiple victim prong of § 2F1.1(b)(2) does not violate the rule enunciated in *Romano* because "[w]hile the minimal planning element is penalized by § 3B1.1(a), the multiple victim element is not." *United States v. Aideyan,* 11 F.3d 74 (6th Cir.1993); *see also United States v. Williams,* 1994 WL 702627 at * 6, 1994 U.S. App. LEXIS 35536 at * 17 (6th Cir. Dec. 15, 1994). Accordingly, the District Court properly enhanced King's sentence under both § 3B1.1 and § 2F1.1(b).[2]

For the reasons set forth above, the denial of King's motion to suppress and the sentence imposed by the District Court are hereby **AFFIRMED.**

---

**2.** After the *Romano* case was decided, the Sentencing Guidelines were amended to provide that, absent instructions to the contrary, enhancements must be applied cumulatively. *See* Sentencing Guideline § 1B1.1, comment n. 4.

King argues that application of this amendment to his conduct violates the *ex post facto* clause of the Constitution. As this appeal may be decided without reliance on the amendment, the Court need not address this contention.