[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-15131

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 20, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-00122-CR-T-24-EAJ

UNITED STATES OF AMERICA,

                                                        Plaintiff-Appellee,

versus

ALBERT TERRILL JONES,
a.k.a. Berto,
ELGIN RAY LOFTON,
a.k.a. E-Luv,
LUTHER FORD,
a.k.a. Chuck Ford,
RONALD RAY LANGDON,
MICHAEL WAYNE COBB,

                                                        Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(September 20, 2005)

Before TJOFLAT, PRYOR and ALARCON[*], Circuit Judges.

_____

[*] Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

PER CURIAM:

In this appeal, five defendants, each convicted of conspiracy to possess with intent to distribute various illegal drugs, assert numerous challenges to their convictions and sentences. Because the testimony at trial amply supported their convictions, the defendants did not have a legitimate expectation of privacy in text messages sent to or from another that precluded that other person from testifying, and the district court did not err when it applied the Sentencing Guidelines, we affirm each conviction and sentence.

## I. BACKGROUND

Albert Terrill Jones, Elgin Ray Lofton, Luther Ford, Ronald Ray Langdon, and Michael Wayne Cobb were indicted on charges of conspiracy to possess with intent to distribute five kilograms of cocaine, fifty grams of crack cocaine, and 100 kilograms of marijuana, in violation of section 841(a)(1) of Title 21 of the United States Code. The conspiracy involved participants in California, Nevada, Tennessee, and Florida who shipped drugs and money across the county by parcel services. The conspirators used text message pagers to communicate with each other.

After the conspiracy was discovered, government agents identified Marquette McCalebb as the leader or a major part of the conspiracy. Special Agent

2

Kevin McLaughlin of the Drug Enforcement Agency learned from a former conspirator that the conspirators communicated through text message pagers. McLaughin contacted Skytel Communications, the service provider for the pagers. McLaughlin also contacted Federal Express, the United States Postal Service, Airborne Express, and DHL regarding shipments of drugs by mail.

McCalebb was arrested in California, and his home was searched. Agents discovered a large conspiracy ring that involved numerous participants: Jones, Langdon, Lofton, Ford, Cobb, and others. Each defendant had a different role in the conspiracy. Ford mailed packages containing drugs to Octavius Henderson and Jones in Florida. Ford received $50 to $100 for each package shipped. **[Rd. Br. 4].** Langdon supplied McCalebb with five to ten kilograms of cocaine per week. **[Rd. Br. 4].** Lofton, in Las Vegas, received drug proceeds on behalf of McCalebb. **[Rd. Br. 7].** Cobb and Jones, in Florida, received packages containing drugs. **[Rd. Br. 8-9].**

Skytel informed McLaughlin that it maintained records of the actual text messages sent by pager, and Skytel would disclose the records if it received an administrative subpoena. **[Rd. Br. 18].** McLaughlin, therefore, served Skytel with a subpoena for records of text messages sent on the defendants' pagers. **[Rd. Br. 18].** McLaughlin did not obtain a warrant. McCalebb, Jones, Cobb, and Langdon

3

moved to suppress the text message records, **[Rd. Br. 17],** and the district court determined that the defendants established a subjective expectation of privacy in the text messages and suppressed the records. **[Rd. Br. 19-20].**

McCalebb pleaded guilty to conspiring to possess with intent to distribute five kilograms or more of cocaine in accordance with a written plea agreement, and agreed to cooperate with the government. **[Rd. Br. 21].** At the request of the government, McCalebb's attorney obtained records pertaining to McCalebb's pager from Skytel, which were forwarded to the government. Over the other defendants' objections, the district court ruled that McCalebb would be permitted to testify regarding text messages he had sent to and received from his co-defendants. **[Rd. Br. 21].** McCalebb was the star witness of the government.

A jury found Jones, Ford, Cobb, Langdon, and Lofton guilty of the charged conspiracy. The district court sentenced Jones to 300 months, Ford to the mandatory minimum sentence of 120 months, Cobb to 151 months, Langdon to 360 months, and Lofton to 188 months. Each defendant appealed.

## II. STANDARD OF REVIEW

We review for abuse of discretion the evidentiary rulings of the district court. Chrysler Intern. Corp. v. Chemaly, 280 F.3d 1358, 1360 (11th Cir. 2002). We review de novo the denial of a motion for judgment of acquittal. United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005). We review for abuse of discretion the denial of a motion for new trial. United States v. Day, 405 F.3d 1293, 1297 (11th Cir. 2005).

Whether the evidence presented at trial is sufficient to support the criminal conviction is a question of law subject to de novo review. United States v. Diaz, 248 F.3d 1065, 1084 (11th Cir. 2001). "The evidence is viewed in the light most favorable to the government and all reasonable inferences and credibility choices are made in the government's favor." Id.

We review de novo the application of the Sentencing Guidelines by the district court, and review for clear error its findings of fact. United States v. Crawford, 407 F.3d 1174, 1177-78 (11th Cir. 2005). We review de novo a preserved error regarding the constitutionality of a sentence, United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005), but review for plain error an error raised for the first time on appeal. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005).

## III.  DISCUSSION

The five defendants each raise a number of issues on appeal.  One issue is common to Jones, Langdon, and Cobb: the admission of testimony by McCalebb regarding text messages.  We will first consider that common issue, and we will then address the unique arguments of each defendant in turn.

*A.  The District Court Did Not Abuse Its Discretion When It Admitted Testimony By McCalebb Regarding Text Messages He Received.*

Jones, Langdon, and Cobb argue that the district court abused its discretion when it admitted testimony regarding the text messages from McCalebb's pager. The district court initially suppressed the text message records, which the government had obtained by administrative subpoena from Skytel.  The district court nevertheless allowed testimony regarding the text messages when McCalebb pleaded guilty and agreed to testify at trial.  The district court concluded that McCalebb could waive any privacy right he had with regard to the messages.

"A person has an expectation of privacy protected by the Fourth Amendment if he has a subjective expectation of privacy, and if society is prepared to recognize that expectation as objectively reasonable."  United States v. Miravalles, 280 F.3d 1328, 1331 (11th Cir. 2002) (citing Katz v. United States, 389 U.S. 347, 361, 88 S. Ct. 507, 516 (1967) (Harlan, J., concurring)).  An individual's right to privacy is limited, however.  "[T]he Fourth Amendment does not prohibit the obtaining of

information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." United States v. Miller, 425 U.S. 435, 443, 96 S. Ct. 1619, 1624 (1976) limited by statute.

We have not addressed previously the existence of a legitimate expectation of privacy in text messages or e-mails. Those circuits that have addressed the question have compared e-mails with letters sent by postal mail. Although letters are protected by the Fourth Amendment, "if a letter is sent to another, the sender's expectation of privacy ordinarily terminates upon delivery." United States v. King, 55 F.3d 1193, 1995-96 (6th Cir. 1995) (citations omitted). Similarly, an individual sending an e-mail loses "a legitimate expectation of privacy in an e-mail that had already reached its recipient." Guest v. Leis, 255 F.3d 325, 333 (6th Cir. 2001); United States v. Lifshitz, 369 F.3d 173, 190 (2d Cir. 2004). See also United States v. Maxwell, 45 M.J. 406, 418 (C.A.A.F. 1996) ("Drawing from these parallels, we can say that the transmitter of an e-mail message enjoys a reasonable expectation that police officials will not intercept the transmission without probable cause and a search warrant. However, once the transmissions are received by another person, the transmitter no longer controls its destiny."), cited in Guest, 255 F.3d at 333.

The government elicited testimony from McCalebb concerning text messages that he sent or received through his pager. Because the defendants did not have a reasonable expectation of privacy in the text messages received or sent by McCalebb, the district court correctly permitted McCalebb to testify regarding the content of those messages.

The defendants also erroneously argue that the earlier ruling of the district court suppressing the text messages is law of the case and precludes the later decision to permit McCalebb to testify. Whether McCalebb could testify regarding text messages that he sent and received was a separate issue from whether the government was entitled to use text messages it obtained without a warrant, and the earlier ruling was not law of the case for that issue. McCalebb's testimony did not violate the Fourth Amendment and suppression was not warranted.

### B. Albert Terrill Jones

#### 1. Even If The District Court Abused its Discretion When it Admitted Rule 404(b) Evidence, Any Error was Harmless.

Jones argues that the district court abused its discretion when it admitted evidence of Jones's 1995 conviction, under Federal Rule of Evidence 404(b), to prove his intent to conspire to distribute drugs. We need not address the admissibility of that evidence, however, because any error of the district court was harmless.

8

"[E]videntiary and other nonconstitutional errors do not constitute grounds for reversal unless there is a reasonable likelihood that they affected the defendant's substantial rights; where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." United States v. Matthews, 411 F.3d 1210, 1229 (11th Cir. June 8, 2005). In Matthews, we concluded that we could not say that improperly-admitted Rule 404(b) evidence was harmless because, "[d]espite the district court's limiting instruction, it seems fairly likely to us that the Government's witnesses seemed credible to the jury only because Matthews had been caught dealing drugs once before." 411 F.3d at 1230. This case is distinguishable from Matthews.

Several other defendants were convicted along with Jones. The jury must have found the testimony against the other defendants sufficiently credible to convict them. It does not, therefore, seem "fairly likely" that the "Government's witnesses seemed credible to the jury" only because of Jones's previous conviction. Because there was ample testimony against Jones, any error in admitting the Rule 404(b) evidence did not have substantial influence on the outcome and was, therefore, harmless.

2. The District Court Did Not Commit Plain Error When It Sentenced Jones.

Jones argues that the district court erred, under United States v. Booker, 543

9

U.S. ___, 125 S. Ct. 738 (2005), when it treated the Sentencing Guidelines as mandatory in sentencing Jones. Because Jones did not preserve this argument in the district court, we review it for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298-1300 (11th Cir. 2005). Although, under Booker, the district court plainly erred when it treated the Guidelines as mandatory, the plain error standard also requires a showing that the plain error also affected Jones's substantial rights. Id. at 1301. Nothing in the record suggests that the district court would have imposed a lesser sentence if it had applied the Guidelines in an advisory fashion. Jones, therefore, cannot satisfy the plain error standard. Id.

### C. Luther Ford

### 1. The District Court Properly Denied Ford's Motion for a Judgment of Acquittal.

Ford argues that the district court erroneously denied his motion for a judgment of acquittal, under Federal Rule of Criminal Procedure 29, because the evidence was insufficient to prove his knowledge of and intent to join the conspiracy. **[Ford Br. 7].** "To uphold the denial of a Rule 29 motion, we need only determine that a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." United States v. Descent, 292 F.3d 703, 706 (11th Cir. 2002) (quotations and citation omitted).

"To prove participation in a conspiracy, the government must have proven

10

beyond a reasonable doubt, even if only by circumstantial evidence, that a conspiracy existed and that the defendant knowingly and voluntarily joined the conspiracy." United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005) (citation omitted). "To satisfy this burden, the government need not prove that the defendant[] knew all of the detail[s] or participated in every aspect of the conspiracy. Rather, the government must only prove that the defendant[] knew the essential nature of the conspiracy." Id. at 1269-70 (quotations and citation omitted). "Whether [the defendant] knowingly volunteered to join the conspiracy may be proven by direct or circumstantial evidence, including inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." Id. (quotations and citation omitted).

Ford argues that the government did not introduce evidence that he knowingly and voluntarily participated in the conspiracy and knowingly possessed illegal drugs. **[Ford Br. 8].** The government introduced evidence that Ford routinely shipped packages for McCalebb to Jones and Henderson under the name of Ford's employer, and Ford received $50 to $100 for each package shipped. **[R. Br. 36].** This evidence was sufficient for a jury to conclude beyond a reasonable doubt that Ford knowingly and voluntarily participated in the conspiracy, and the district court did not err when it denied the motion for judgment of acquittal.

11

## 2. The District Court Did Not Abuse Its Discretion When it Denied Ford's Motion for a New Trial.

Ford argues that a new trial was warranted because the verdict was against the great weight of the evidence. To grant a motion for new trial because the verdict is against the great weight of the evidence, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." United States v. Cox, 995 F.2d 1041, 1043 (11th Cir. 1993). "Motions for new trials based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really exceptional cases." Id. (quotations and citation omitted).

The district court denied Ford's motion and stated that, "considering the evidence presented at trial, the Court does not find that the weight of the evidence contradicts the jury's verdict as to [Ford]." **[R52:2].** As discussed above, the evidence showed that the other conspirators paid Ford to ship packages for McCalebb to Jones and Henderson under the name of Ford's employer. The district court did not abuse its discretion.

### D. Elgin Ray Lofton

#### 1. The District Court Correctly Denied Lofton's Motions for Judgment of Acquittal and New Trial.

Lofton argues that his motions for judgment of acquittal and new trial should

have been granted because the testimony of McCalebb was so unbelievable as to infect the entire trial. **[Lofton Br. 39-40].** The evidence presented at trial established that Lofton received drug proceeds from other conspirators and delivered them to McCalebb. **[Rd. Br. 37-38].** Lofton did not have a pager, but he spoke with McCalebb regularly. **[Lofton Br. 16].** Lofton received each month $20,000 from Los Angeles and $30,000 to $60,000 from Tennessee and Florida. **[Lofton Br. 24].** The evidence was sufficient to support the verdict and the district court did not err when it denied the motion for judgment of acquittal. Garcia, 405 F.3d at 1269-70. Additionally, the district court did not abuse its discretion when it denied the motion for a new trial because the verdict was not against the great weight of the evidence. Cox, 995 F.2d at 1043.

2. The District Court Did Not Clearly Err when It Found that Lofton Was Not Entitled to a Minor-Role Reduction.

Lofton also argues that the district court erred when it refused to grant a reduction because of Lofton's minor role in the offense, which he contends was limited to receiving money. **[Lofton Br. 42].** "A district court's finding regarding a defendant's role in the offense is reviewed for clear error." United States v. Ryan, 289 F.3d 1339, 1348 (11th Cir. 2002). "A defendant warrants a two-level reduction for playing a minor role in an offense if he is less culpable than most other participants, although his role could not be described as minimal." Id. (citing

13

U.S.S.G. § 3B1.2, cmt. n.1).  The analysis employed by the district court compares the defendant's role both to both the relevant conduct used in calculating his base offense level and the conduct of the other conspirators:

> The district court conducts a two-pronged analysis of the defendant's conduct to determine whether the defendant warrants a minor-role adjustment.  First, the district court must assess whether a defendant's particular role was minor in relation to the relevant conduct attributed to him in calculating his base offense level.  Only if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable–not a minor role in any larger criminal conspiracy–may a downward adjustment be applied. The second prong of the analysis, if reached, requires the district court to assess a defendant's relative culpability vis-a-vis that of any other participants.

Id. at 1348-49 (internal quotation marks and citations omitted).  The defendant bears the burden of showing his entitlement to the reduction.  Id. at 1348.

The district court found that Lofton did not have a minor role in the offense. The district court based this finding on Lofton's substantial activities, which included Lofton's receipt of at least 24 packages of drug proceeds **[Rd. Br. 59]** that he changed into smaller bills and laundered.  **[Lofton Sent. Tr. 32].**  The finding of the district court was not clearly erroneous, because the evidence belies Lofton's arguments.

*E.  Ronald Ray Langdon*

1.  The District Court Did Not Abuse Its Discretion When it Admitted Evidence Seized From Langdon's House.

14

Langdon argues that the district court erred when it denied his motion to suppress evidence seized during an illegal search of his residence. **[Langdon Br. 22-23].** Although the district court found that the warrant to search Langdon's residence was not supported by probable cause, the district court found that a good faith exception applied to the search. **[R329:2].** "Under [the] good faith exception to the exclusionary rule, suppression is necessary only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." United States v. Robinson, 336 F.3d 1293, 1296 (11th Cir. 2003) (quotations and citation omitted).

An affidavit listed two pieces of evidence that supported the warrant:

(1) four Express Mail labels addressed to "R. Langdon" or "R. London" written in what appears to be the same handwriting as some of the labels addressed to McCalebb and addressed to a different address than that which was ultimately searched and (2) a statement that DEA Agent McLaughlin informed him that text messages sent by co-defendant McCalebb identified Langdon as a supplier of six kilograms of cocaine to Preston Dent, an unindicted co-conspirator.

**[R329:2].** The district court found that reliance on the warrant was in good faith and reasonable, because "the affidavit was not reckless or dishonest or so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." **[R329:3].**

We need not determine whether probable cause existed, because the good

15

faith exception applies here.  There is no evidence that the affidavit was dishonest or recklessly prepared, and a reasonable officer could have believed that based on the affidavit that there was probable cause to search Langdon's residence.  The district court did not abuse its discretion when it admitted the evidence seized during the search.

2.  The District Court Did Not Err When It Applied the Sentencing Guidelines.

Langdon argues that the district court erroneously enhanced his sentence for use of a firearm and obstruction of justice.  An enhancement for obstruction of justice is appropriate when the defendant has perjured himself.  U.S.S.G. § 3C1.1 n.2.  Langdon testified at the suppression hearing that he did not use code words when communicating with his co-conspirators.  **[Langdon Sent. Tr. 11-12].**  The district court found that the testimony was false and applied the enhancement.  This finding was not clearly erroneous.  **[Langdon Sent. Tr. 19].**

Under section 2D1.1(b)(1) of the Sentencing Guidelines, a firearm enhancement may apply if a defendant possessed a weapon during the offense:

> [I]f a defendant possessed a dangerous weapon during a drug-trafficking offense, his offense level should be increased by two levels.  The commentary to § 2D1.1 explains that this firearm enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."

United States v. Audain, 254 F.3d 1286, 1289 (11th Cir. 2001) (quoting U.S.S.G. §

16

2D1.1, comment. n.3). During the search of Langdon's residence, two firearms were found, one on the bed in the master bedroom and one in the closet. Money was found nearby, and there were drugs in the residence. **[Langdon Sent. Tr. 33].** The district court did not clearly err when it found that it was not clearly improbable that the firearms were connected to the drug trafficking offense. **[Langdon Sent. Tr. 33].**

### F. Michael Wayne Cobb

#### 1. The Evidence Was Sufficient to Support Cobb's Conviction.

Cobb argues that the evidence presented was insufficient to show that he had knowledge of the conspiracy. **[Cobb Br. 24].** The evidence at trial showed that Cobb helped distribute the cocaine and marijuana, picked up packages of drugs from two individuals, paid for the delivery services, delivered drug proceeds, mailed drug proceeds to Lofton in Las Vegas, and sold cocaine to Sullivan. **[Rd. Br. 37].** The testimony in the record amply supports Cobb's conviction.

#### 2. The District Court Did Not Clearly Err When It Determined that Lofton Was Not Entitled to a Minor-Role Reduction.

The district court found that Cobb did not have a minor role in the conspiracy compared to the other conspirators. **[Cobb Sent. Tr. 25].** Based on the testimony at trial described above, the finding of the district court was not clearly erroneous. See Ryan, 289 F.3d at 1348-49.

17

## IV. CONCLUSION

Each of the arguments of the defendants fails.  The convictions and sentences imposed by the district court are, therefore,

**AFFIRMED.**

TJOFLAT, Circuit Judge, specially concurring:

I concur in the court's judgment. I write briefly, and separately, with respect to Part III, B, 2 of the court's opinion, which addresses Albert Jones's sentence, specifically his Booker claim. Adhering to binding precedent—United States v. Rodriguez—as it must, the court refuses to entertain the claim because "[n]othing in the record suggests that the district court would have imposed a lesser sentence if it had applied the Guidelines in an advisory fashion." Ante at ___. In other words, Jones failed to establish the third element of the plain-error test, i.e., prejudice that "affected his substantial rights." Id. For the reasons I expressed in United States v. Thompson, No. 04-12218, 2005 WL 2099784, at *17-19 (11th Cir. Sept. 1, 2005), we should not expect to find anything in the record indicating that the court would have imposed a lesser sentence if it had treated the Guidelines as advisory rather than mandatory. To expect a pre-Booker court to say, at sentencing, that it would impose a lesser sentence were the Guidelines not mandatory would be to expect the court to have anticipated Booker and the new sentencing model it fashioned. I suggest that no one—save the justices of the Supreme Court—could have anticipated that model. This is one of the reasons why I contend that Rodriguez was wrongly decided. United States v. Rodriguez, 406 F.3d 1261, 1281 (11th Cir. 2005) (Tjoflat, J., dissenting from the denial of

19

rehearing en banc).  But <u>Rodriguez</u> remains the law; thus, Jones's sentence must be

affirmed.